CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 18 2018

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

HAWK ADVISERS, INC., )
)
   Plaintiff, )
) Civil Action No. 7:18-CV-00145
v. )
)
RYAN E. GILLENWATER, ) By: Hon. Michael F. Urbanski
) Chief United States District Judge
   Defendant. )

## MEMORANDUM OPINION

Currently pending before the court are plaintiff Hawk Advisers, Inc.'s ("Hawk") motion to expedite (ECF No. 5) and motion for a preliminary injunction (ECF No. 7). At a hearing held on the motions on May 4, 2018, the court questioned whether an arbitration clause in an employment agreement precluded the court from deciding Hawk's motions. Following the hearing, defendant Ryan E. Gillenwater ("Gillenwater") moved to compel arbitration and stay the proceedings pending arbitration, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4. ECF No. 25. Hawk opposed the motion and filed a supplemental memorandum in support of its preliminary injunction motion. For the reasons set forth below, the court will **GRANT** the motion to compel arbitration.

### I.

In 2009, defendant Gillenwater became an insurance agent for Carlton Wright Insurance Company ("Carlton Wright"), and the two parties entered into an employment agreement (the "Producer Agreement"). Compl. ¶ 7, ECF No. 1; Producer Agreement, ECF No. 23-1. The Producer Agreement prohibited Gillenwater from disclosing Carlton

Wright's confidential or trade secret information to third parties and required Gillenwater to return all Carlton Wright business records when his employment ended. Producer Agreement § IX. The Producer Agreement further barred Gillenwater from soliciting Carlton Wright's customers or employees for a period of three years following the termination of his employment. Id. at §§ VIII, XI. In the section on dispute resolution, titled "XIII. Arbitration/Litigation" (the "Arbitration Clause"), the Producer Agreement provides as follows:

> Any controversy, claim, or breech [sic] giving rise to a claim for liquidation [sic] or monetary damages arising out of or relating to this Agreement shall be submitted for settlement to an arbitrator agreed upon by both parties hereto. If the parties cannot agree upon an arbitrator, the controversy, claim, or breach shall be referred to the American Arbitration Association with a request that the Association appoint an Arbitrator. Arbitration shall be held in the city of business of the Agency in accordance with the rules and standards of the American Arbitration Association.
>
> In the event any party hereto resorts to either legal action or arbitration as the result of any dispute pertaining to any of the terms of this Agreement, the prevailing party shall be entitled to collect all costs incurred, including but not limited to attorney's fees and other costs.

Id. at § XIII. The parties agreed that Virginia law would govern the interpretation and enforcement of the Producer Agreement. Id. at § XVII.

During his employment with Carlton Wright, Gillenwater built a book of business in the family entertainment and amusement industry (the "Amusement Book"). Compl. ¶¶ 9-11. The business expanded in 2012, and Carlton Wright began operating the Amusement Book as Keystone Amusement Enterprises ("KAE"). Id. ¶ 12.

In 2015, Rand Wright ("Wright"), owner of Carlton Wright, and Stephen Hamilton ("Hamilton"), owner of Commercial Insurance Services, Inc., formed Hawk to serve as a

2

holding company. Id. ¶ 13. Wright became the president of the new company, which took control of Carlton Wright's Amusement Book and retained Gillenwater and other Carlton Wright employees. Id. ¶¶ 14-16. As part of the transition, in March 2016, Gillenwater signed a nondisclosure and confidentiality provision (the "Confidentiality Agreement") in the Hawk employee handbook. Confidentiality Agreement, ECF No. 23-2.

In June 2016, Hawk made Gillenwater an officer and vice president of the company. Compl. ¶ 18. By the fall of 2017, however, Wright and Hamilton became concerned about Gillenwater's work performance and confronted Gillenwater about his conduct in late November 2017. Id. ¶¶ 21, 26, 36.

On January 16 and 17, 2018, Gillenwater secretly met with Hawk's competitor, McGowan Insurance ("McGowan"), in Ohio. Id. ¶ 42. Analysis of Gillenwater's work computer revealed that he had compiled information about Hawk's finances and customers on the evening before he travelled to Ohio. ECF No. 23-11 at ¶ 11-12. Gillenwater spoke to two other Hawk employees, as well as Wright, about selling the Amusement Book to McGowan and leaving Hawk to work for McGowan. Compl. ¶¶ 42-43. On January 26, 2018, Hawk fired Gillenwater. Id. ¶ 68.

After leaving Hawk, Gillenwater became a vice president at McGowan. ECF No. 1-6. Hawk believes that Gillenwater is soliciting its customers and continues to have administrator authority and credentials to the KAE Facebook page, as well as access to the "KAE Notebook," a Cloud system containing information about Hawk's clients. Compl. ¶¶ 88, 96.

The managing director of McGowan, Lee Stacey, avers that McGowan has not

permitted Gillenwater to violate his employment agreement. ECF No. 23-14 at ¶ 5. Stacey further avers that Gillenwater has not shared any Hawk information with McGowan. Id. ¶ 4. At the preliminary injunction hearing, Hawk admitted that it has not lost any business or employees to McGowan.

On April 4, 2018, Hawk sued Gillenwater for misappropriation of trade secrets, breach of contract, conversion, violation of the Computer Fraud and Abuse Act, breach of fiduciary duty and the duty of loyalty, violation of the Virginia Business Conspiracy Act, tortious interference, and punitive damages. Hawk now seeks a preliminary injunction prohibiting Gillenwater from writing business for family entertainment centers in the United States, soliciting Hawk clients and employees, or using Hawk's confidential and proprietary information for any purpose during the pendency of this matter. Hawk requests an order requiring Gillenwater to return any confidential Hawk information and to relinquish his passwords and credentials for the KAE Notebook and the KAE Facebook page. Hawk further asks that Gillenwater be required to preserve all Hawk information and provide access to his electronic storage devices and accounts for inspection by a forensic expert designated by Hawk. In addition to a preliminary injunction, Hawk seeks permanent injunctive relief, compensatory damages, and punitive damages.

## II.

The FAA "represents 'a liberal federal policy favoring arbitration agreements.'" Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297, 301 (4th Cir. 2002) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). "When parties have entered into a valid and enforceable agreement to arbitrate their

4

disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings, and compel arbitration in accordance with the agreement's terms." Id. (citing 9 U.S.C. §§ 3-4). The court must therefore decide the following two issues: (1) whether the parties have a valid and enforceable agreement to arbitrate, and (2) whether Hawk's claims fall within the scope of the Arbitration Clause.

**A.**

Hawk argues that the Arbitration Clause gives the parties the option to pursue either arbitration or litigation. Courts have addressed conflicting dispute resolution language at "the 'validity' step of the arbitration analysis." See Sharpe v. AmeriPlan Corp., 769 F.3d 909, 915 (5th Cir. 2014); see also Dome Tech., LLC v. Golden Sands Gen. Contractors, Inc., 257 F. Supp. 3d 735, 742 (W.D. Va. 2017). In deciding whether an agreement to arbitrate is valid, courts apply state law. Adkins v. Labor Ready, Inc., 303 F.3d 496, 501 (4th Cir. 2002) ("Whether a party agreed to arbitrate . . . is a question of state law governing contract formation."). Here, the parties have agreed to apply Virginia law. Producer Agreement § XVII. Accordingly, the following contract interpretation principles apply:

> Contracts are construed as written, without adding terms that were not included by the parties. Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used. Furthermore, contracts must be considered as a whole without giving emphasis to isolated terms. Finally, no word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it, and parties are presumed not to have included needless words in the contract.

Dome Tech., LLC, 257 F. Supp. 3d at 742 (quoting TM Delmarva Power, LLC v. NCP of Va., LLC, 557 S.E.2d 199, 200 (Va. 2002)). However, at this stage, "the presumption in

5

favor of arbitration does not apply." Noohi v. Toll Bros., Inc., 708 F.3d 599, 611 n.6 (4th Cir. 2013) (citing Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287 (2010)).

As explained above, Hawk interprets the Arbitration Clause to permit the parties to choose either arbitration or litigation. Hawk notes that the title of the Arbitration Clause is "Arbitration/Litigation" and the second paragraph of the Arbitration Clause refers to "either legal action or arbitration." See Producer Agreement § XIII. Hawk further argues that the reference to "settlement" in the Arbitration Clause indicates the parties' intent to engage in nonbinding, rather than mandatory, arbitration.[1]

The court is unconvinced and need not look further than the plain language of the Arbitration Clause to confirm that arbitration is mandatory under the Producer Agreement. The Arbitration Clause states that disputes "shall be submitted for settlement to an arbitrator . . . ." Producer Agreement § XIII. "Clearly, by using the term 'shall,' the parties intended that alternative dispute resolution was mandatory . . . ." Bowers v. N. Two Cayes Co. Ltd., No. 1:15-cv-00029-MR-DLH, 2017 WL 4310856, at *5 (W.D.N.C. Sept. 27, 2017). The Arbitration Clause in this case does not indicate that the parties have "simply agreed that they had the option [of arbitration] available." Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 237 (5th Cir. 2013).

In making this determination, the court draws upon cases involving an analogous situation: an agreement containing both an arbitration clause and a forum selection clause. When possible, courts have harmonized the two clauses in favor of arbitration. Compare

---

[1] Even if the parties agreed to nonbinding arbitration, the Arbitration Clause can be enforced under the FAA. See United States v. Bankers Ins. Co., 245 F.3d 315, 322 (4th Cir. 2001) (enforcing nonbinding arbitration agreement). In any event, the Arbitration Clause provides for binding arbitration. The reference to the American Arbitration Association's rules, which relate to binding arbitration only, and the use of the phrase "prevailing party" both indicate that the parties intended for arbitration to be binding. Bowers, 2017 WL 4310856, at *5.

Applied Energetics, Inc. v. NewOak Capital Markets, LLC, 645 F.3d 522, 525 (2d Cir. 2011) ("Here, the Placement Agreement's language that '[a]ny dispute' between the parties 'shall be adjudicated' by specified courts stands in direct conflict with the Engagement Agreement's parallel language that 'any dispute . . . shall be resolved through binding arbitration.' Both provisions are all-inclusive, both are mandatory, and neither admits the possibility of the other."), with Pers. Sec. & Safety Sys., Inc., 297 F.3d 388, 396 (5th Cir. 2002) ("Rather than covering all 'disputes' or all 'claims' like the arbitration provision in the Product Development Agreement, the forum selection clause confers 'exclusive jurisdiction' on Texas courts only with respect to 'any suit or proceeding.' This limitation suggests that the parties intended the clause to apply only in the event of a non-arbitrable dispute that must be litigated in court.").

Applying those cases here, the court believes that the references to litigation and arbitration in the Arbitration Clause can be harmonized. Under the Producer Agreement, legal action may be available for nonarbitrable disputes, or when a party must take legal action to compel arbitration or enforce an arbitration award. See Sharpe, 769 F.3d at 916 (ruling that a reference to legal action in a forum selection clause was "not incompatible with the . . . arbitration requirement because lawsuits often precede arbitration (when a court may be asked to decide the validity, scope, and enforceability of an arbitration clause) or follow arbitration (when a court may be asked to enforce or set aside an arbitration award)"). Thus, reading the Arbitration Clause as a whole, the court concludes that the parties created a valid agreement to submit disputes to mandatory arbitration.

**B.**

Hawk next argues that its claims do not fall within the scope of the Arbitration Clause for two reasons: (1) the Arbitration Clause applies to claims "for <u>liquidation [sic] or monetary damages</u>," not to claims for injunctive relief, and (2) the Arbitration Clause applies to claims "arising out of or relating to the <u>Producer Agreement</u>," not to claims unrelated to that contract. <u>See</u> Producer Agreement § XIII.

Both of Hawk's arguments prove unpersuasive. First, the Arbitration Clause applies to claims for injunctive relief. It does not expressly carve out injunctive relief from its scope. <u>See, e.g.</u>, <u>T&S Brass & Bronze Works, Inc. v. Slanina</u>, No. 6:16-03687, 2017 WL 1734362, at *6-7 (D.S.C. May 4, 2017) (entertaining request for injunctive relief to preserve status quo pending arbitration when arbitration provision stated that "'[i]n addition to their right of arbitration, Company shall have the right to obtain injunctive relief . . . in any court of competent jurisdiction . . . without proceeding to arbitration'"); <u>Hawkins v. Fishbeck</u>, No. 3:17-CV-00032, 2017 WL 4613664, at *1, *3 n.4 (W.D. Va. Oct. 16, 2017) (recognizing the same). Instead, the agreement broadly includes claims "giving rise to" liquidated or monetary damages. This broad language conceivably includes more than monetary relief. The parties could have chosen narrower language such as "claims for liquidated or monetary damages," but they instead chose the broader language of "giving rise to."

Under these circumstances, the court cannot state "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." <u>Peabody Holding Co., LLC v. United Mine Workers of Am., In'tl Union</u>, 665 F.3d 96, 104 (4th Cir. 2012) (internal quotation marks omitted). Moreover, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." <u>Moses H. Cone Mem'l</u>

8

Hosp., 460 U.S. at 24-25; see also Adkins, 303 F.3d at 500 ("[A]mbiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." (internal quotation marks omitted)). Thus, in light of the presumption in favor of arbitration, the court concludes that the Arbitration Clause applies to claims for injunctive relief.

Second, the Arbitration Clause covers all nine of Hawk's claims against Gillenwater because they all arise under or relate to the Producer Agreement.[2] Clauses requiring the arbitration of all disputes "arising out of or relating to" a contract are considered "broad arbitration clauses capable of expansive reach" and include every dispute between the parties that has a "'significant relationship'" to the contract. Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996); see also Wachovia Bank. Nat'l Ass'n v. Schmidt, 445 F.3d 762, 767 (4th Cir. 2006); Long v. Silver, 248 F.3d 309, 316-17 (4th Cir. 2001), overruled on other grounds by Hertz Corp. v. Friend, 559 U.S. 77 (2010). In applying the significant relationship test, courts look to the factual allegations underlying the claim, not to the legal label applied to it. J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 319 (4th Cir. 1988).

Under this standard, the court concludes that all of Hawk's claims have a significant relationship to the Producer Agreement. The breach of contract claim arises under the Producer Agreement to the extent it alleges violations of the Producer Agreement, and

---

[2] Hawk also makes two related arguments that must fail. Hawk appears to argue that it is not subject to any arbitration agreement with Gillenwater because only Gillenwater and Carlton Wright signed the Producer Agreement. Next, Hawk argues that its claims do not relate to the Producer Agreement because they all involve conduct arising after Hawk formed and Gillenwater signed the Confidentiality Agreement. Hawk cannot rely on the Producer Agreement in the complaint while simultaneously disavowing the provisions in the contract that Hawk finds inconvenient. See Am. Bankers Ins. Grp., Inc. v. Long, 453 F.3d 623, 628 (4th Cir. 2006) (alteration and internal quotation marks omitted). ("[A] nonsignatory should be estopped from denying that it is bound by an arbitration clause when its claims against the signatory arise from the contract containing the arbitration clause."). Moreover, the Confidentiality Agreement does not purport to supersede the Producer Agreement.

9

relates to the Producer Agreement to the extent it alleges violations of the Confidentiality Agreement. Both breach of contract claims rely on the same factual allegations. The claims for misappropriation of trade secrets similarly rely on allegations that Hawk owned confidential and trade secret information that Gillenwater improperly disclosed to a competitor. These allegations significantly relate to the confidentiality section of the Producer Agreement, § IX. See Hawkins, 2017 WL 4613664, at *4 (finding a significant relationship between an employment agreement and a trade secret claim). Hawk would not have a valid claim for misappropriation of trade secrets if it did not establish that it took reasonable measures to prevent the disclosure of its trade secrets such as by requiring employees to sign agreements containing confidentiality provisions like the one found in the Producer Agreement. See 18 U.S.C. § 1839(3); Va. Code § 59.1-336; see also Compl. ¶¶ 108, 121 (relying on the Producer Agreement to allege that Gillenwater understood his obligations relating to Hawk's confidential and trade secret information).

The breach of fiduciary duty claim has a significant relationship to the Producer Agreement because the Producer Agreement governs the employment relationship that gave rise to Gillenwater's fiduciary duties. See Long, 248 F.3d at 318 (recognizing a breach of fiduciary duty claim as significantly related to an agreement when the claim created the relationship giving rise to the fiduciary duty at issue). On brief, Hawk argues that Gillenwater did not have a duty of loyalty to Hawk until he became an officer, which occurred after he signed the Producer Agreement. But the factual allegations underlying the breach of fiduciary duty claim and breach of the duty of loyalty claim overlap, and both stem from the employment relationship governed by the Producer Agreement. See Compl. ¶ 158

(alleging that Gillenwater was "an employee and officer ow[ing] a duty of loyalty and a fiduciary duty to [Hawk] by virtue of the employer-employee relationship that existed between the parties.").

The remaining claims have a significant relationship to the Producer Agreement because they all concern conduct addressed in the Producer Agreement. The conversion claim concerns Gillenwater's alleged wrongful possession of Hawk records, which the Producer Agreement required Gillenwater to return to Hawk following his termination. See Producer Agreement § IX. The Computer Fraud and Abuse Act claim addresses Gillenwater's alleged unlawful access to Hawk's confidential information, "in violation of his contractual and other obligations to [Hawk]." Compl. ¶¶ 150-51. The Producer Agreement addressed the access and use of Hawk's confidential information in § IX. The Virginia Business Conspiracy Act and tortious interference claims both allege that Gillenwater attempted to solicit Hawk's customers and employees, "in violation of his contractual and fiduciary duties." Compl. ¶¶ 162, see also id. ¶¶ 164-68. These claims necessarily overlap with the nonsolicitation period created in the Producer Agreement. See Producer Agreement §§ VIII, XI. Finally, the claim for punitive damages encompasses all of the foregoing claims, and therefore is significantly related to the Producer Agreement for the same reasons explained above.

The court concludes that Hawk's claims fall within the scope of the Arbitration Clause. The FAA therefore requires the court to stay this case pending arbitration.

### III.

Hawk argues that an exception to mandatory arbitration applies in this case. That

11

exception, the "hollow formality rule" provides that "where a dispute is subject to mandatory arbitration under the Federal Arbitration Act, a district court has the discretion to grant a preliminary injunction to preserve the status quo pending the arbitration of the parties' dispute if the enjoined conduct would render that process a 'hollow formality.'" Merrill Lynch, Pierce, Fenner & Smith v. Bradley, Inc., 756 F.2d 1048, 1053 (4th Cir. 1985). The United States Court of Appeals for the Fourth Circuit has explained that "[t]he arbitration process would be a hollow formality where 'the arbitral award when rendered could not return the parties substantially to the status quo ante.'" Id. at 1053-54 (internal quotation marks omitted).

The hollow formality rule does not apply in this case for two reasons. First, Hawk has made no showing that an arbitral award of money damages could not return the parties substantially to the status quo ante. Second, because Hawk has made no showing that money damages would not be adequate, Hawk has not established irreparable harm as required for a preliminary injunction. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20, 23-24 (2008) (ruling that a court cannot issue a preliminary injunction unless all four elements of a preliminary injunction have been met, including the element that the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"); Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346-47 (4th Cir. 2009), vacated on other grounds, 130 S. Ct. 2371 (2010), reinstated in relevant part, 607 F.3d 355 (4th Cir. 2010) (noting that, post-Winter, a plaintiff must make a "clear showing" that he is likely to be irreparably harmed absent preliminary relief).

Harm is not irreparable when it can be compensated by money damages that are both

12

ascertainable and adequate. Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 552 (4th Cir. 1994), abrogated on other grounds by Winter, 555 U.S. 7. "[W]hen the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." Id. However, when an employer "has not shown that it is losing, or imminently will lose customers," the employer has not established irreparable harm. Ameritox, Ltd. v. Savelich, 92 F. Supp. 3d 389, 403 (D. Md. 2015).

Here, Hawk admitted at the preliminary injunction hearing that, despite three months passing since Gillenwater's termination, it has not lost any employees or customers as a result of Gillenwater's alleged conduct. The owner of McGowan, Lee Stacey, has also averred that Gillenwater has not disclosed any confidential Hawk information to McGowan. ECF No. 23-14 ¶¶ 4-5. On this record, Hawk cannot show that it is losing, or imminently will lose, customers. Nor has Hawk demonstrated any other incalculable harm. Hawk has therefore not made a clear showing of irreparable harm.

In sum, an arbitral award of money damages would be adequate in this case. Thus, arbitration is not a hollow formality, and if the court considered the preliminary injunction motion, it would deny the motion for failure to show irreparable harm.

## IV.

The court concludes that, under the FAA, the court must stay these proceedings pending arbitration, and no exception applies for a preliminary injunction. Accordingly, defendant Ryan E. Gillenwater's motion to compel arbitration (ECF No. 25) is **GRANTED**

and this case is **STAYED** pending arbitration. All other pending motions are **DISMISSED AS MOOT**. An appropriate Order will be entered.

Entered: May 18, 2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge

14